IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

**JEROME MERAZ**  **PLAINTIFF**
**ADC #113295**

v.                    No: 2:24-cv-00048-LPR-PSH

**DEXTER PAYNE,** *et al.*                    **DEFENDANTS**

## PROPOSED FINDINGS AND PARTIAL RECOMMENDATION

## INSTRUCTIONS

The following partial Recommendation has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

### I.  Introduction

Plaintiff Jerome Meraz, an inmate at the Arkansas Division of Corrections' Delta Regional Unit, filed a complaint pursuant to 42 U.S.C. § 1983 on March 13, 2024, raising First Amendment free exercise of religion claims (Doc. No. 2). At the Court's direction, he amended his complaint twice to clarify his claims. *See* Doc.

Nos. 6 & 9. Meraz sues ADC Director Dexter Payne, Warden Christopher Budnik, Chaplain Joshua Mayfield, and Brandon Medders (the "Defendants"). Doc. Nos. 9 & 20-21.

Before the Court is a motion for summary judgment, a brief in support, and a statement of facts filed by the Defendants claiming that Meraz did not exhaust available administrative remedies with respect to his claims against them before he filed this lawsuit (Doc. Nos. 33-35). Meraz filed a response to the motion (Doc. No. 37). For the reasons described below, the undersigned recommends that the Defendants' motions for summary judgment be denied.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in

his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Analysis

Defendants argue that they are entitled to summary judgment on Meraz's claims because Meraz failed to exhaust all available administrative remedies before he filed this lawsuit. In support of their motion, the Defendants submitted the applicable ADC grievance policy (Doc. No. 33-1); the declaration of Terri Grigsby-

Brown, the ADC's inmate grievance supervisor (Doc. No. 33-2); a copy of Meraz's grievance history (Doc. No. 33-3); a copy of Grievance DR-23-00746 (Doc. No. 33-4); a copy of Grievance DR-24-00239 (Doc. No. 33-5); and a copy of Grievance DR-24-00055 (Doc. No. 33-6).

A.    *Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. §1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014). Exhaustion under the PLRA is mandatory. *Jones v. Bock*, 549 U.S. at 211; *Hammett v. Cofield,* 681 F.3d 945, 949 (8th Cir. 2012). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA does not prescribe the manner in which exhaustion occurs. *See Jones v. Bock*, 549 U.S. at 218. It merely requires compliance with prison grievance procedures to properly exhaust. *See id*. Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See id*.

Pursuant to the ADC's grievance policy, Administrative Directive 19-34, inmates are provided Unit Level Grievance Forms as part of the Inmate Grievance

Procedure. *See* Doc. No. 33-1 at 5. To resolve a problem, an inmate must first seek informal resolution by submitting a Step One Unit Level Grievance Form (Attachment I) within 15 days after the occurrence of the incident. *Id.* at 6. Inmates are to "specifically name each individual involved for a proper investigation and response to be completed by the ADC." *Id.* at 5. An inmate must be "specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." *Id.* at 6. A problem solver or staff member holding the rank of sergeant or above can collect the grievance and return the yellow and pink copies of the grievance to the inmate as receipts. *Id.* at 7. The problem solver or staff member investigates the complaint and may attempt to resolve the complaint by meeting with the inmate or taking certain other steps, but ultimately must provide a written response at the bottom of the form. *Id.* at 7-8. If the inmate is not satisfied with the resolution or the problem solver does not respond within three working days, he may then complete Step Two of the grievance procedure and submit either the pink or yellow copy of his Unit Level Grievance Form as a formal grievance. *Id.* at 8. The inmate retains either the pink or yellow copy, whichever he did not submit for Step Two. *Id.* at 9. If a formal grievance is medical in nature, it is assigned a code and forwarded to the appropriate medical personnel for response. *Id.* at 10.

The inmate should receive a Response to the Unit Level Grievance Form (Attachment III or IV depending on whether the grievance is medical in nature), or an Acknowledgement or Rejection of Unit Level Grievance (Attachment II). *Id.* at 10-11. If the inmate receives no response, or if the inmate is not satisfied with the response, the inmate can then appeal to the Deputy Director. *Id.* at 12. An inmate's appeal must be written in the space provided on the Response to Unit Level Grievance Form (Attachment III or IV) or the Acknowledgment or Rejection of Unit Level Grievance (Attachment II). *Id.* at 12. The inmate must include the original Unit Level Grievance Form (Attachment I) and either the Response to Unit Level Grievance Form (Attachment III or IV) or the Acknowledgement or Rejection of the Unit Level Grievance (Attachment II) with his appeal. *Id.* If an inmate fails to submit either of the two pages with his appeal, the appeal may be returned to the inmate as rejected. *Id.* Once the Deputy Director responds or the appeal is rejected, the grievance process is complete. *Id.* at 13. According to the ADC's grievance policy, the entire grievance procedure should be completed within 76 working days absent an extension or unforeseen circumstances. *Id.* at 14. The grievance policy specifically states that inmates must exhaust administrative remedies at all levels of the procedure before filing a federal civil rights lawsuit. *Id.* at 19.

B.   *Complaint Allegations*

Meraz alleges that he is of Native American heritage and holds Native American religious beliefs. Doc. No. 9 at 5. He claims that Director Payne and Warden Budnik do not allow him to use a sweat lodge, medicine bag, or peace pipe at his prison unit due to security risks. *Id.* at 4. He alleges that Joshua Mayfield, the chaplain over all the units, as well as the chaplain for his unit (who was eventually identified as Medders) are not "allowing nor fighting" for his rights or pushing for his speedy transfer to a state that will. *Id.* at 4-5. He states that he is not allowed to practice his religion in the traditional ways, such as praying in a sweat lodge or "to smudge 'smoke off' with medicines 'herbs'" or to have a peace pipe and tobacco for pipe ceremonies. *Id.* at 5. Meraz also complains that he was told in a grievance response that he may have a ceremonial headdress, but to have such a headdress, he needs a prayer feather, and that he does not have the appropriate license to possess or request eagle feathers in Arkansas. *Id.* at 5-6.

C.   *Relevant Grievances & Exhaustion of Meraz's Claims*

In her declaration, Inmate Grievance Supervisor Terri Grigsby-Brown stated that she reviewed Meraz's grievance appeal file and found three grievances that appear to address his claims: DR-23-00746, DR-24-00239, and DR-24-00055. *See* Doc. No. 33-2 at ¶¶ 29, 31. Meraz does not identify any other grievances in his response. *See* Doc. No. 37.

1.   Failure to Name Individuals in DR-23-00746 and DR-24-00055.

The Defendants argue that Meraz has not exhausted his claims against them because he did not specifically name them in Grievances DR-23-00746 and DR-24-00055. Meraz does not dispute that he did not name any individuals in these grievances. Each is described below along with the applicable law regarding the waiver of procedural errors.

**DR-23-00746.** Meraz submitted DR-23-00746 on November 7, 2023. Doc. No. 33-4. He stated, "I'm being denied my religious belief. I'm not allowed to practice it in any way shape or form. Native American." *Id.* at 5. Warden Budnick responded, stating: "Statements from staff indicate that every Wednesday you are schedule to come to the chapel and worship." *Id.* at 4. Meraz appealed, stating:

> Nothing in the Native American Religion do we worship in a chapel, we pray in a sweat lodge, we have pipe seramonie, we wear medicine bags we smoke (smudge off) not listen to meditation music & pray inside a brick building. Everything that go's to religion is a security risk.

*Id.*[1]  His appeal was denied on January 10, 2024. *Id.* at 3.

**DR-24-00055.** Meraz submitted DR-24-00055 on January 15, 2024. Doc. No. 33-6. He stated,

> I am Native American & that is my religious belief. I am not allowed to smudge/smoke off, wear a medicine bag, go in a sweat lodge, participate in a pipe ceremony or have in my possession any of our

---

[1] Grievances are transcribed verbatim provided the handwriting is legible. No corrections are made for misspellings or mistakes.

>medicine (sage, lavender, eucalyptus, etc.) as my ancestors practiced. I am not allowed any of this in ADC.

*Id.* at 5. In response, Warden Budnik stated:

>Religious Services Policy & Procedure Manual states in part that documented Native American inmates may possess any or all of the following articles: an eagle feather, a ceremonial headdress, a ceremonial headband. The articles may not be used or worn in a manner not in keeping with general policy on Religious Articles. Therefore, your grievance is without merit.

*Id.* at 4. Meraz appealed stating:

>My ways and practices are recognized by & protected by the federal government. As such any and all prison are to allow me to practice any federally recognized religious beliefs & especially if it takes federal money & if not is to make arrangements to be placed in a institution that dose.

*Id.* His appeal was denied on February 26, 2024. *Id.* at 3.

**Applicable Law.** The ADC grievance policy requires inmates to name each individual involved in alleged constitutional violations. *See* Doc. No. 33-1 at 5. The United States Court of Appeals for the Eighth Circuit has determined that the failure to name specific defendants can be a procedural deficiency, and prison officials' acceptance and resolution of a procedurally deficient grievance can serve to establish proper exhaustion. *See Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (PLRA's exhaustion requirements are satisfied if grievance is considered on the merits, even if it could have been denied for procedural deficiencies). *See also Bower v. Kelley*, 494 Fed. Appx. 718 (8th Cir. 2012) (unpublished per curiam);

*Daniels v. Hubbard,* No. 5:14CV00360 BSM, 2015 WL 9222627, at *1–2 (E.D. Ark. Dec. 17, 2015). This is a fact-intensive analysis. For example, in *Burns v. Eaton*, the Court affirmed the dismissal of a claim against a defendant who was not named in the grievance and whose conduct was not addressed in the grievance. 752 F.3d 1136 (8th Cir. 2014). However, the relevant grievance specifically named another individual, and was therefore proper under ADC policy. *Id.* at 1141-1142. Prison officials were able to investigate the conduct of the named individual, and had no reason to question whether other individuals or claims should have been investigated. *Id.* In other cases, a plaintiff's failure to name a defendant in a grievance has been held not to prevent exhaustion where the ADC has enough information to adequately investigate the grievance, does so, and decides the grievance on the merits. *See e.g., Chapman v. Norris*, No. 5:15CV00103-DPM-JTK, 2016 WL 4483862, at *4 (E.D. Ark. Apr. 19, 2016), *report and recommendation adopted in part, rejected in part sub nom. Chapman v. Gibson*, No. 5:15-CV-103-DPM-JTK, 2016 WL 4483849 (E.D. Ark. Aug. 24, 2016); *Rodriguez v. Page,* No. 1:15CV00022 BSM/PSH, 2016 WL 4473818, at *2–3 (E.D. Ark. Aug. 9, 2016), *report and recommendation adopted,* No. 1:15CV00022 BSM, 2016 WL 4472960 (E.D. Ark. Aug. 23, 2016); *Wilson v. Arkansas Dep't of Correction*, No. 5:14CV00248 SWW/PSH, 2016 WL 1626770, at *3 (E.D. Ark. Mar. 30, 2016),

*report and recommendation adopted*, No. 5:14CV00248 SWW, 2016 WL 1611443 (E.D. Ark. Apr. 21, 2016); *Daniels v. Hubbard, supra*.

**Analysis.** Meraz did not name any defendants in Grievances DR-23-00746 and DR-24-00055 as required by the ADC's grievance policy. However, neither Meraz's grievances nor grievance appeals were rejected for that reason, and he received a response on the merits at both levels. Accordingly, Meraz's failure to name the Defendants did not prevent the ADC from investigating these grievances. Meraz exhausted his administrative remedies with respect to his free exercise claims.

2. <u>Meraz's Grievance Regarding a Transfer: DR-24-00239</u>.

Defendants also argue that DR-24-00239 does not serve to exhaust Meraz's claim that Mayfield refused to transfer him to another state. Doc. No. 34 at 8-9. Meraz argues that he named Mayfield in this grievance as well. Doc. No. 37.

Meraz submitted DR-24-00239 on May 6, 2024. Doc. No. 33-5. He stated,

> I wrote Dexter Payne a couple weeks ago asking why my interstate compact was not being exbedited like it was in 2011 when I filed on being denied religious belief as I did this time.

*Id.* at 6. In response, Warden Budnik stated:

> You were advised in my response to your grievance DR-24-00192, which informed you that you are on the waiting list for Oklahoma. Also, different circumstances can arise that affect any manner. Therefore, your grievance is without merit.

*Id.* at 5.[2]  Meraz appealed, stating that ADC policy and circumstances had remained the same since 2011.  *Id.*  His appeal was denied on June 19, 2024.  *Id.* at 4.

The Court finds this grievance is not necessary to exhaust Meraz's free exercise claims.  He has no separate claim relating to a transfer to another unit or state. That is simply the relief he seeks if the ADC will not accommodate his religious beliefs.  *See* Doc. No. 9 at 4-5, 7.  "Prisoners have no constitutional right to be housed in the prison of their choice, and prison officials may transfer a prisoner 'for whatever reason or for no reason at all.'"  *Squire v. Woods*, 19 F.3d 23 (8th Cir. 1994) (quoting *Olim v. Wakinekona,* 461 U.S. 238, 250 (1983); *cf. Goff v. Burton,* 7 F.3d 734, 737-38 (8th Cir. 1993) (prison officials can transfer for any reason, except for retaliatory reasons alone).  This case is about whether or not the Defendants have substantially burdened the free exercise of Meraz's religion.  It is not about whether he received a requested transfer or not.  Accordingly, it is not necessary to determine whether DR-24-00239 exhausts a claim relating to a requested transfer.[3]

---

[2] According to Meraz's grievance history, DR-24-00192 was submitted on April 1, 2024, and concerned "complaints against staff."  Doc. No. 33-3 at 1.  Defendants did not provide a copy of this grievance, but Meraz does not contend it serves to exhaust his claims in this case.  *See* Doc. No. 37.

[3] The Court further notes that DR-24-00239 was both submitted and completed after Meraz filed this lawsuit. The Eighth Circuit Court of Appeals has held that exhaustion of administrative remedies must occur before a lawsuit is filed.  *See generally Johnson v. Jones,* 340 F.3d 624, 628 (8th Cir. 2003).  *See also Tyler v. Kelley*, No. 5:17CV00239 JLH-JTK, 2018 WL 1528784, at *3 (E.D. Ark. Mar. 2, 2018); *Dunahue v. Bolden*, No. 5:16CV00105 BSM/JTR, 2016 WL 7650673, at *2 (E.D. Ark. Dec. 19, 2016).  Meraz has asserted in all of his complaints that he should be transferred to a prison in another state if

## IV. Conclusion

The undersigned recommends that the Defendants' motions for summary judgment (Doc. No. 33) be DENIED and Meraz be allowed to proceed with his free exercise of religion claims.

DATED this 22nd day of April, 2025.

_____
UNITED STATES MAGISTRATE JUDGE

---

his religious beliefs cannot be accommodated in Arkansas. *See* Doc. Nos. 2, 6 & 9. Accordingly, it is not a *new* claim raised in an amended or supplemental complaint. *See e.g., Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017) ("[T]he PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, provided that the plaintiff's original complaint contained at least one fully exhausted claim.").